UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM BLUEFORD, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF OAKLAND, et al.,<br><br>    Defendants. | Case No. 12-cv-03791-WHO<br><br>**ORDER ON PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 46 |

Oakland police officers Miguel Masso and Joseph Fesmire stopped three African-American males who were walking on the sidewalk near midnight on May 5, 2012 at 90th Street and Birch Avenue in Oakland. The chain of events that followed led to the death of one of the men, Alan Blueford. The question I must decide on plaintiffs' motion for partial summary judgment is whether the initial stop violated Blueford's right to be free from unreasonable search and seizure under the Fourth Amendment. Because there are material facts in dispute, summary judgment is DENIED.

## BACKGROUND

Plaintiffs Adam Blueford and Jeralynn Blueford file this case individually and as co-successors in interest to decedent Alan Blueford against the City of Oakland, Howard Jordan in his capacity as Chief of Police for the City of Oakland, and Miguel Masso individually and in his capacity as police officer for the City of Oakland (collectively, "defendants"). Plaintiffs assert causes of action for wrongful death and related claims under 42 U.S.C. section 1983. Dkt. No. 1. The facts in the record on plaintiffs' motion for partial summary judgment against defendant Masso, primarily taken from defendants' records and testimony, are described below.

Shortly before midnight on May 5, 2012 defendant officer Miguel Masso and officer Joseph Fesmire were patrolling the "high crime" area of 90th Street and Birch Avenue in Oakland,

1   California in a marked Oakland Police Department patrol car.  Masso Depo. Vol. I at 47:9-14.

2   The officers observed three African-American males age 18 to 20 walking on the sidewalk.  May

3   8, 2012, Internal Affairs Interview ("IA Interview") at 13:24-15:12.

4         Masso made eye contact with one of the men and observed the other two men repeatedly

5   looking behind them as they walked.  IA Interview at 14:1-16.  The officers were aware that a trio

6   of African-American youths had committed several robberies in the area.  Masso Depo. Vol. I at

7   38:17-39:13; 45:12-22.  They did not know whether the three men walking on the sidewalk were

8   the suspects in those robberies.  Masso observed one of the men repeatedly touching the right side

9   of his waistband, which the officers were trained to identify as a "gun check."  *Id*. at 15:23-16:6;

10  Masso Depo. Vol. I at 59:5-8.  Consequently, the officers suspected that the man was carrying a

11  concealed firearm.  *Id*.  Masso and Fensmire did not see a handgun or the imprint of a handgun

12  through the man's clothes.  Masso Depo. Vol. I at 59:9-18.

13        The officers discussed whether to approach the three men and continued to observe them

14  for about 30 to 45 seconds.  IA Interview 16:15-22.  As the men walked, they switched positions

15  as if they were passing a firearm or contraband between them.  Masso Depo. Vol. II at 50:12-20.

16  The man who the officers believed was carrying a firearm walked to a fence, made a motion as if

17  he reached into his waistband, and appeared to discard an object through the fence.  IA Interview

18  16:23-17:17:3.  The officers speculated that he discarded a firearm or contraband.  Masso Depo.

19  Vol. II at 18:10-24.  The officers saw the men "constantly looking back" at the officers.  IA

20  Interview 17:15-16.  Based on these observations, the officers decided to approach the men and

21  pulled up next to them in their patrol car.  IA Interview at 17:16-18:4; Masso Depo Vol. II at

22  11:16-12:4; 39:8-19.

23        When the officers approached, the men continued walking.  Masso "made something up to

24  engage them" by asking if they had heard gunshots in the area.  IA Interview at 19:4-7; 47:13-17;

25  Masso Depo. Vol. II at 13:2-8.  The men stopped on their own, without being told by the officers

26  to stop.  Masso and Fensmire got out of their car.  Masso Depo. Vol. II at 13:2-8.  Fensmire

27  handcuffed the man who they believed discarded a firearm through the fence.  Masso ordered the

28  two other men to sit on the sidewalk.  IA Interview 19:8-12.  One of the two men who sat on the

United States District Court
Northern District of California

sidewalk was the decedent, Alan Blueford. Masso did not handcuff Blueford or pull out his gun. *Id*. 19:16-20:19, 48:1-23. The purpose of ordering the men to sit was "to have a little control over them" out of concern for his and officer Fensmire's safety, since the men outnumbered the officers. *Id*. 48:10-23.

Fensmire walked to the area by the fence where the officers believed a weapon was discarded. *Id*. at 19:12-14. Masso then saw Blueford get up off the sidewalk and start running. IA Interview at 19:14-15; 20:13-19. Masso believed that Blueford was running because he may be carrying a firearm or other contraband. IA Interview at 24:14-19. Masso chased Blueford, and observed that Blueford's hands were clutching at his waistband instead of swinging to his sides, which reinforced his belief that Blueford was carrying a gun. IA Interview at 25:2-26:4; Masso Depo. Vol. II at 52:3-12. Masso yelled "stop running" several times and warned Blueford that he would tase him if he did not stop running. IA Interview at 49:1-14.

Masso closed in on Blueford until he was about 5 to 10 feet away. *Id*. at 27:17-24. About 30 to 45 seconds into the chase, Masso saw Blueford pull a gun out of his waistband, turn his body clockwise, and point the gun at him. *Id*. at 28:12-18; Masso Depo. Vol. I at 31:11-25; Masso Depo. Vol. II 59:9-24. Masso believed that his life was in danger, pulled out his firearm, and fired at Blueford. IA Interview 28:20-29:2; 30:11-16; Masso Depo. Vol. II 59:25-60:6. Blueford fell into a fence in front of a house. IA Interview 30:17-21. Masso saw Blueford turn his body and point his gun towards Masso again. IA Interview 30:22-31:2. Masso was about 5 feet away from Blueford at this time, so he began "backpedaling" and fired at Blueford again. *Id*. 30:22-31:6. Blueford fell to the ground. *Id*. 31:3-6.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has

made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

A plaintiff asserting a claim under § 1983 must demonstrate that (1) the action occurred "under color of state law," and (2) the action resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) (internal citations omitted); 42 U.S.C. § 1983 (2006) (Section 1983 imposes civil liability on any person who, under color of state law, "subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."). The parties dispute whether Masso's initial stop and seizure of Blueford violated his Fourth Amendment rights. Br. at 15-17; Reply at 2.[1]

The Fourth Amendment's prohibition of unreasonable seizures is not limited to arrests; it applies to all seizures that occur "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16, (1968). Stops under the Fourth Amendment "fall into three categories." *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993). "First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, consensual exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered

---

[1] Plaintiffs clarify in their reply brief that their motion is limited to the constitutionality of the initial stop. Reply at 2.

seizures." *Id*. (citation and quotation marks omitted). Second, the police may seize citizens for brief, investigatory stops. *Id*. An "investigatory stop" or "Terry stop" is a seizure that "fall[s] short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In an investigatory stop, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion. *Id*. Finally, police stops may be full-scale arrests. These stops are seizures, and must be supported by probable cause. *United States v. Watson*, 423 U.S. 411, 417 (1976).

**A. A Trier of Fact Could Find That Masso Had Reasonable Suspicion to Stop Blueford**

Police officers may conduct "a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002). The reasonable suspicion standard applied to investigatory stops is "'a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Id*. (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In determining whether officers had reasonable suspicion, courts must "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation and quotation marks omitted). This approach allows officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available" to them. *Id*. Nonetheless, an officer may not rely upon a mere hunch to justify an investigatory stop. *Id*. at 274. Rather, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. at 21. A seizure may only be justified by reference to factors that were present up to the time the stop was made. *Montero–Camargo*, 208 F.3d 1122, 1130 n.11 (9th Cir. 2000).

The Court agrees with Masso that a reasonable trier of fact could find that the evidence supports a "particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744. The facts supporting Masso's suspicion that Blueford was engaged in criminal activity are: (1) Masso and Fensmire observed three young men who very loosely fit a description of individuals that had committed several robberies in the area (three African-

American youths); (2) one of those individuals repeatedly touched the right side of his waistband, which the officers were trained to identify as a "gun check"; (3) that same individual made a motion as if he reached into his waistband and discarded an object through the fence; (4) as the men walked, they switched positions as if they were passing a firearm or contraband between them; (5) the men were "constantly looking back" at the officers.

There is more than one conclusion that a reasonable trier of fact might draw from Masso's testimony, and a jury might agree with plaintiffs' assertion that Masso's detention of Blueford was unreasonable. However, the record on summary judgment is not just that Blueford was an African-American outside at night in a high-crime area, as plaintiffs contend. Br. at 16. Plaintiffs allege, "being African-American, a late teenager/young adult, in a bad neighborhood at night gives rise to only two things: 1) an inchoate suspicion of criminal conduct; and 2) racial profiling." *Id*. But plaintiffs cite no evidence in support of their racial profiling assertions, and the Court finds none in the record. Plaintiffs are correct that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). However, an individual's presence in an area of criminal activity may support the existence of reasonable suspicion when combined with other facts. *Id*. For instance, evasive behavior, furtive movements, and suspicious eye contact are all relevant factors in evaluating whether the totality of the circumstances supports reasonable suspicion. *See id*. ("nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *Montero–Camargo*, 208 F.3d at 1136 (eye contact, or the lack thereof, when evaluated in light of the circumstances, "may be considered as a factor establishing reasonable suspicion").

Masso testified that the three men were exhibiting behaviors that could reasonably be interpreted as nervous and evasive, including evading eye contact and "constantly looking back" at the officers. IA Interview at 14:1-16; IA Interview 17:15-16. Further, the men exhibited other physical behaviors that raised the officers' suspicion that at least one of them possessed a concealed firearm. One of the men made movements that appeared to be "gun checks." The three men switched positions while walking and appeared to be passing something between them. The

6

man who the officers suspected had a concealed firearm appeared to discard an object through a fence. Masso Depo. Vol. II 186:8-15. Masso testified that this act in particular raised the officers' suspicion of wrongdoing. Masso Depo. Vol. II 186:8-15 ("When I saw [the man] reach into the fence and placed [sic] something or discarded something in between the fence, that definitely raised my suspicion that he did discard a [sic] contraband. All of this led me to believe that there was contraband or discarded, discarded a weapon, which raised my level of suspicion to go ahead and make contact and conduct an investigative stop.").

The evidence submitted goes far beyond the plaintiffs' unsupported assertions that the officers stopped Blueford merely because they saw "three young black men walking to the store at night." Br. at 17. Defendants have presented evidence of "specific and particularized" facts supporting Masso's reasonable suspicion that that Blueford and his companions were engaged in criminal activity. *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744. At oral argument the plaintiffs argued that Masso and Fensmire's suspicion was unreasonable because they never actually saw a gun in the possession of Blueford or his companions before conducting the stop. Plaintiffs also argued that even if the officers had reason to suspect the man who they believed made "gun check" movements and discarded an object, they did not have individualized suspicion as to Blueford. These arguments just raise further factual disputes inappropriate for resolution at summary judgment.

Therefore, looking at the totality of the circumstances, and viewing the evidence in the light most favorable to non-movants, as the Court must, genuine issues of material fact exist regarding whether the officers possessed a reasonable suspicion to conduct an investigatory stop. Accordingly, plaintiffs' request for summary judgment is DENIED.

**B. A Reasonable Trier of Fact Could Conclude That Defendants' Seizure Of Blueford Was Not An Arrest Requiring Probable Cause**

Plaintiffs appear to assert that a trier of fact could reasonably infer that the Terry stop crossed the line into an unlawful arrest for which Masso had no probable cause. In evaluating whether a police stop is in fact an arrest, the "essential inquiry is whether the person stopped reasonably believed that he or she was not free to leave." *Morgan v. Woessner*, 997 F.2d 1244,

1253 (9th Cir. 1993) (citation omitted). The inquiry is "largely a factual one which depends on the totality of the circumstances." *Id.* at 1253. As stated by the Ninth Circuit:

> Generally, a Terry stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons. If the stop proceeds beyond these limitations, an arrest occurs, which requires probable cause. There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning.
>
> Under ordinary circumstances, drawing weapons and using handcuffs are not part of a Terry stop. Nevertheless, we allow intrusive and aggressive police conduct without deeming it an arrest . . . when it is a reasonable response to legitimate safety concerns on the part of the investigating officers. In determining whether a stop amounts to an arrest, we also consider the specificity of the information that leads the officers to suspect that the individuals they intend to question are the actual suspects being sought and the number of police officers present.
>
> We have permitted the use of intrusive means to effect a stop where the police have information that the suspect is currently armed or the stop closely follows a violent crime. Under such circumstances, holding a suspect at gunpoint, requiring him to go to his knees or lie down on the ground, and/or handcuffing him will not amount to an arrest.

*United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001) (internal quotation marks, citations and alterations omitted). *See also Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) ("There is no bright line rule to determine when an investigatory stop becomes an arrest. . . . In looking at the totality of the circumstances, we consider both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.").

Plaintiffs allege that a seizure occurred when Masso ordered Blueford and his companion to sit on the sidewalk. Shortly thereafter, Blueford fled. Plaintiffs acknowledge that "[p]rior to the flight, Defendant Masso had not pulled out his gun, displayed force, indicated that the men were under arrest, or handcuff either of the two men who he had asked to sit." Br at 8.

Given the totality of the circumstances, the Court does not find that a reasonable trier of fact must conclude that Masso's actions were intrusive to the extent that they amounted to an arrest. Handcuffing, drawing weapons, and physical restriction of a suspect, as well as the number of police officers present, are all relevant factors in evaluating the intrusiveness of the stop.

*Washington*, 98 F.3d at 1189–90.  Here, Masso did not draw his gun, he did not physically restrain Blueford, and Blueford complied with the order to sit on the sidewalk.  Courts have found that a Terry stop does not amount to an unlawful arrest in far more intrusive circumstances.  *See, e.g., Gallegos v. City of Los Angeles*, 308 F.3d 987, 992 (9th Cir. 2002) (finding Terry stop did not become arrest where officers ordered plaintiff from car at gunpoint; handcuffed, frisked, and placed plaintiff in a patrol car; plaintiff was compliant; and officers were not convinced a particularized danger existed); *United States v. Fontenot*, No. 10-0778 RS, 2011 WL 634814 at *3 (N.D. Cal. Feb. 11, 2011) *aff'd*, 484 F. App'x 186 (9th Cir. 2012) (circumstances did not amount to arrest where officer drew his weapon in ready position, ordered three men to raise and make visible their hands, and when plaintiff did not comply, raised his weapon at the plaintiff).  Further, Masso ordered the men to sit because he was concerned for officer safety, which in some circumstances may justify a greater level of intrusiveness during an investigatory stop that does not cross the line into an arrest.  *Miles*, 247 F.3d at 1012 (9th Cir. 2001); *Washington v. Lambert*, 98 F.3d at 1185.

       Plaintiffs argue that there "was probable cause to detain only the man [who the officers believed had a concealed firearm]" and that "Blueford, and the other person, were free to leave." Br. at 10.  In support of their assertion that Masso lacked probable cause to detain Blueford, plaintiffs point out that in his internal affairs interview, which was taken three days after the incident, Masso stated that Blueford was "free to leave."  Br. at 9, 11.

       Plaintiffs appear to argue that Masso stated Blueford was "free to leave" because Masso believed, at the time of the incident, that the officers lacked reasonable suspicion or probable cause to stop and detain him.  That would not appear to be the case, but if in fact Blueford was "free to leave," plaintiffs' argument would fail because the encounter was a "consensual exchange not requiring either reasonable suspicion or probable cause."  *Morgan*, 997 F.2d at 1253.  To the extent that plaintiffs argue that Masso had no probable cause to seize Blueford, that argument is unavailing because if the detention did not cross the line into an arrest, probable cause was not necessary.  *Arvizu*, 534 U.S. at 273.  Furthermore, Masso's subjective beliefs are immaterial in determining whether the investigatory stop crossed the line into an unlawful arrest.  "The proper

1  focus in determining whether the coerciveness or restraint used in a stop is sufficient to constitute
2  an arrest is viewed from the perspective of the person seized, not from the perspective of the
3  officers." *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988).

4   Plaintiffs have not submitted any evidence regarding the perspective of Blueford's
5  companions, and rely solely on Masso's statements in support of their motion for summary
6  judgment. They take issue with the fact that several months after the incident, in answers to
7  requests for admission and at a deposition, Masso changed his testimony and asserted that
8  ordering the men to sit on the sidewalk was in fact a detention. At Masso's deposition, he stated:

> When I gave the interview, I had prior thoughts of what was going on. After further reviewing it, that's when I-that was my understanding that they were no longer, no longer detained. So at the time I did the [internal affairs] statement, I originally said they were-it was consensual and they were free to leave. But after further reviewing it, they were not free to leave. And once I asked them to sit on the ground, that actually became a detention. It was no longer consensual.

Masso Depo. Vol. II at 25:4-13. Plaintiffs also assert that there are several other inconsistencies in Masso's testimony. Br. at 6-13.

While the changes in Masso's testimony may create questions as to his credibility or the accuracy of his account, evaluating the credibility of testimony is an issue for the jury, not for the court at summary judgment. *Aloe Vera of America, Inc. v. United States*, 699 F.3d 1153, 1165 (9th Cir.2012) ("In deciding whether to grant summary judgment, 'the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."). At a minimum, Masso's inconsistent testimony is further evidence that the plaintiffs' claim is inappropriate for resolution at summary judgment.

## CONCLUSION

On the record before me, given the totality of circumstances, a reasonable trier of fact could find that Blueford's detention did not violate his Fourth Amendment rights to be free from unreasonable search and seizure. Plaintiffs' motion for partial summary judgment is DENIED.

**IT IS SO ORDERED**.

Dated: March 6, 2014



WILLIAM H. ORRICK
United States District Judge